**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| **SHERAH F.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **Civil Action No. CBD-18-1957** |
| | ) |
| **NANCY A. BERRYHILL,** | ) |
| | ) |
| **Acting Commissioner,** | ) |
| **Social Security Administration** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION

Sherah F. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 17, and Commissioner's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 18. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, and **REVERSES** and **REMANDS** the Administrative Law Judge's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

## I. Procedural Background

On May 1, 2015, Plaintiff filed for DIB under Title II. R. 15, 76, 196–202. On May 5, 2015, Plaintiff filed for SSI under Title XVI. R. 15, 65, 203–11. For both claims, Plaintiff alleged disability beginning April 10, 2015. R. 15, 65, 76. Plaintiff later requested a "closed period of disability" from April 10, 2015 to January 17, 2017. R. 15, 35. Plaintiff alleged disability due to post-traumatic stress disorder ("PTSD") and high blood pressure. R. 65, 76. Plaintiff's claims were initially denied on November 17, 2015, R. 15, 65–86, and upon reconsideration on April 7, 2016, R. 15, 91–118, 127–30. On June 7, 2016, Plaintiff requested an administrative hearing. R. 15, 133–32. A hearing was held before an administrative law judge ("ALJ") on May 24, 2017. R. 15–27. On June 9, 2017, the ALJ denied both of Plaintiff's claims. R. 15–27. Plaintiff sought review of this decision by the Appeals Council, which concluded on April 24, 2018, that there was no basis for granting Plaintiff's Request for Review. R. 1–6. Plaintiff appealed that decision by filing the instant proceeding on June 27, 2018. ECF No. 1.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the administrative law judge ("ALJ") "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial

evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II and Title XVI if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2012). If she is doing such activity, she is not disabled. If she is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If she does not have such impairment or combination of impairments, she is not disabled. If she does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If she does have such impairment, she is disabled. If she does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If she can perform such work, she is not disabled. If she cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If she can perform other work, she is not disabled. If she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. §§ 404.1545(a),

416.945(a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

## III. Analysis

In this matter, the ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 15–27. At step one, the ALJ determined that Plaintiff engaged in substantial gainful activity between March 2017 to the date of the decision. R. 17. However, the ALJ found that "there has been a continuous 12-month period(s) during which [Plaintiff] did not engage in substantial gainful activity." R. 17. Accordingly, the ALJ's findings addressed those periods of time. R. 17. At step two, under 20 C.F.R. §§ 404.1520(c), 416.920(c), the ALJ determined that Plaintiff had the following severe impairments: "major depressive disorder and post-traumatic stress disorder [PTSD]." R. 18. The ALJ stated that the listed impairments were severe because they "constitute more than slight abnormalities and have had more than a minimal effect on the claimant's ability to perform basic work activities for a continuous period of 12 months." R. 18. The ALJ also noted that Plaintiff suffered from "hypertension and obesity" but found them to be "non-severe impairments because they do not even minimally affect [Plaintiff's] ability to carry out basic, work-related activities." R. 18. In step three, the ALJ found that Plaintiff suffered from moderate limitations in concentration, persistence, or pace. R. 19. Ultimately, the ALJ determined that Plaintiff did not have "an impairment or a

5

combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." R. 18. At step four, the ALJ determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels," but included a number of "non-exertional limitations":

> She is capable of performing simple, routine, and repetitive tasks in a work setting with occasional decision-making and occasional changes in the work setting. She should not work in an environment with fast pace requirements or high production quotas. She can have occasional or superficial interaction with co-workers and supervisors, but no contact with the public.

R. 20. The ALJ then determined that Plaintiff was unable to perform any of her past relevant work. R. 20. Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." R. 25. Accordingly, Plaintiff's claims for DIB and SSI were denied. R. 27.

On appeal, Plaintiff requests that the Court grant summary judgment in her favor or, in the alternative, remand this matter to the Social Security Administration ("SSA") for a new administrative hearing. Pl.'s Mem. 12–13. For the reasons set forth below, the Court **REVERSES** the ALJ's decision and **REMANDS** the matter for further proceedings.

### A. The ALJ's assessment of Plaintiff's degree of functional limitation in concentration, persistence, or pace was insufficient.

In her motion, Plaintiff argues that the ALJ failed to properly evaluate her functional limitation in concentration, persistence, or maintaining pace at step three of the sequential evaluation by insufficiently explaining his reasoning for the degree of limitation he assigned at step three of his analysis. Pl.'s Mem. 9, 21–23. Commissioner counters that the ALJ provided sufficient explanation for how he came to his determination. Comm'r's Mem. 5–11.

At step three of the sequential evaluation, the ALJ must determine whether a claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings pertaining to mental impairments "consist[] of: (1) a brief statement describing its subject disorder; (2) 'paragraph A criteria,' which consists of a set of medical findings; and (3) 'paragraph B criteria,' which consists of a set of impairment-related functional limitations." *Rayman v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-14-3102, 2015 WL 6870053, at *2 (D. Md. Nov. 6, 2015) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)). "If the paragraph A and paragraph B criteria are satisfied, the ALJ will find that the claimant meets the listed impairment." *Frank P. v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-18-2342, 2019 WL 2164092, at *6 (D. Md. May 16, 2019).

Paragraph B provides the functional criteria assessed by the ALJ and consists of four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace;[1] and (4) adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b). The ALJ employs a "special technique" to rate the degree of a claimant's functional limitations in these areas. 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

---

[1] The functional area of concentration, persistence, or maintaining pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(E)(3). According to the regulations, examples of the ability to focus attention and stay on task include:

> Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

*Id.*

> We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function.

20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The ALJ then uses a five-point scale to rate a claimant's degree of limitation: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b).

Once the special technique has been applied, the ALJ is supposed to include the results in the opinion as follows:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4); 416.920a(e)(4). "[F]ailure to properly document application of the special technique will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017) ("Without documentation of the special technique, it is difficult to discern how the ALJ treated relevant and conflicting evidence."). While an ALJ is not expected to go into the same level of detail as he does when determining a claimant's RFC, an ALJ must still provide sufficient explanation such that the court can ascertain how he came to the conclusions that he did. *Id.* at 663 (stating that "the dispute here arises from a problem that has become all too common among administrative decisions challenged in this court—a problem decision

makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work"); *see also Brocato v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-16-2540, 2017 WL 3084382 (D. Md. July 19, 2017); *Miles v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-16-1397, 2016-WL-6901985 (D. Md. Nov. 23, 2016) (holding the court was unable to ascertain the reason for finding the claimant had moderate limitations in concentration, persistence, or maintaining pace as "[i]t appears the ALJ largely discredits [the claimant's] reports of difficulty with attention and concentration"); *Baylor v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-15-3520, 2016 WL 6085881 (D. Md. Oct. 18, 2016) (noting that the "cursory analysis provided . . . suggests that the finding of 'moderate difficulties' was based exclusively on the finding that [the claimant] reported issues in concentration and asked if she had dementia . . . since the remaining sentences in the analysis would suggest mild or no limitations").

Here, the ALJ determined that Plaintiff had "moderate difficulties" in concentration, persistence, or maintaining pace, and provided the following explanation:

> The next functional area addresses [Plaintiff's] ability to concentrate, persist, or maintain pace. For this criterion, [Plaintiff] has moderate limitations. [Plaintiff] contended that she has limitations in concentrating generally and focusing generally. On the other hand, [Plaintiff] said that she is able to prepare meals, read, manage funds, handle her own medical care, and attend church. Additionally, the record fails to show any mention of distractibility or inability to complete testing that assesses concentration and attention.

R. 19. Plaintiff argues that this explanation is insufficient to permit the Court to review the ALJ's determination and cites to several decisions by this Court to support her assertion, including *Brocato*. Pl.'s Mem. 21–23.

In *Brocato*, the ALJ found the claimant suffered from moderate difficulties in the ability to concentrate, persist, or maintain pace. 2017 WL 3084382 at *3. The court determined that the ALJ must have based this determination "exclusively on [the claimant's] reported issues in

concentration, since the remaining sentences in the analysis would suggest mild or no limitations." *Id.* In reversing the ALJ's decision, the *Brocato* Court found the "cursory" explanation failed to meet regulatory requirements for assessing someone's difficulties in concentration, persistence, or maintaining pace. *Id.* The Court held that, absent additional explanation, it was "unable to ascertain whether the ALJ truly believed [the claimant] to have moderate difficulties in concentration, persistence, and pace, instead of mild, or no difficulties, and how those difficulties restrict her RFC . . . ." *Id.*; *see also Miles*, 2016 WL 6901985; *Baylor*, 2016 WL 6085881.

As in the aforementioned cases, the ALJ here provided only a brief explanation for his finding that Plaintiff had "moderate difficulties" in her ability to concentrate, persist, or maintain pace. R. 19. As he cites to no objective evidence in the record to support his finding of this level of difficulty, the ALJ appears to rest his determination solely on Plaintiff's self-reported "limitations in concentrating generally and focusing generally." R. 19. The remaining portion of the ALJ's explanation not only mitigates the finding of any difficulty in this functional area, it appears to undermine Plaintiff's credibility as to the reliability of her self-reported symptoms in general. R. 19. While the Court could surmise—based on its own review of the evidence—that symptoms of Plaintiff's depression and PTSD impact her ability to concentrate, persist, or maintain pace to a moderate degree, this would be beyond the role of the Court in these proceedings. *Hays*, 907 F.2d at 1456. It is the ALJ who is tasked with "build[ing] an accurate and logical bridge from the evidence to [his] conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *see also Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), as amended (Feb. 22, 2019) (citation omitted) (stating "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion").

Commissioner's argument that the ALJ provided sufficient explanation for his finding later in his discussion conflates two sections of the ALJ's decision: the step three application of the special technique to analyze the degree of Plaintiff's functional limitations and the subsequent analysis of the evidence in the record supporting a determination of Plaintiff's RFC. However, as the Fourth Circuit has articulated, there is a separate duty to provide sufficient documentation of the application of the special technique. *Compare Patterson*, 846 F.3d 656, 662 (discussing an ALJ's duty to "properly document application of special technique" at step three), *with Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) (discussing the ALJ's duty to provide sufficient explanation for an RFC analysis). One cannot substitute for the other as the degree of limitation determined at step three imposes additional requirements on the ALJ as he moves forward in the sequential evaluation process. *See Mascio*, 780 F.3d at 638 (holding a finding of moderate limitations in concentration, persistence, or maintaining pace requires a corresponding limitation in the RFC). Without providing a more detailed explanation for how the record supports his conclusion, the ALJ's explanation leaves the Court "unable to ascertain whether the ALJ truly believed [Plaintiff] to have moderate difficulties in concentration, persistence, and pace, instead of mild, or no difficulties." *Brocato*, 2017 WL 3084382, at *3. Therefore, the Court hereby orders this matter remanded for further proceedings to include an explanation of how the degree of limitation in concentration, persistence, and maintaining pace was determined, including details for how the evidence available in the record supports the ALJ's determination, if not immediately clear.

While remand is warranted on this first issue, Plaintiff raised additional issues in her motion. "Because these issues may recur on remand, [the Court will] address them now."

*Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (citing *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 342–43 (4th Cir. 2012)).

**B. The ALJ's RFC assessment fails to meet the requirements of *Mascio*.**

Plaintiff argues that the ALJ failed comply with the requirements articulated in *Mascio* by failing to incorporate limitations in Plaintiff's RFC corresponding with the ALJ's finding of Plaintiff's moderate limitations in concentration, persistence, or maintaining pace. Pl.'s Mem. 11–21, 23–25. Commissioner counters that the RFC was based on sufficient evidence and the ALJ included an explanation for why the functional limitations included in the RFC accommodated for Plaintiff's moderate limitations. Comm'r's Mem. 5–9.

In *Mascio*, the Fourth Circuit held that a RFC assessment must account for an ALJ's step three finding of moderate limitations in concentration, persistence, or maintaining pace beyond limiting a claimant to performing only "simple, routine tasks." 780 F.3d at 638. This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in his RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, Civ. No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). In performing an RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636 (quoting SSR 96-8p, 61 Fed. Reg. at 34,478) (internal quotation marks omitted).

> Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two. Indeed, our precedent makes

clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.

*Thomas*, 916 F.3d 307, 311 (citation omitted); *Woods*, 888 F.3d 686, 694 ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" (emphasis original) (quoting *Monroe*, 826 F.3d 176, 189)).

As discussed above, the functional area of concentration, persistence, or maintaining pace, "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). Since *Mascio*, courts have reviewed various ALJs' attempts to include corresponding limitations in their RFC assessments for moderate limitations in this functional area.[2] The Fourth Circuit's recent decision in *Thomas* provided additional clarification.[3] In that case, the ALJ found the plaintiff had moderate limitations in concentration, persistence, or maintaining pace, and concluded that she had an RFC to preform light work with the following additional mental limitations:

---

[2] *See, e.g.*, *Wilson v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-2666, 2018 WL 3941946, at *5 (D. Md. Aug. 16, 2018) (holding limitations for interactions with other individuals does not address concentration, persistence, or maintaining pace; rather it addresses social functioning); *McDonald v. Comm'r*, Civ. No. SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (concluding "a RFC restriction that [the claimant could] perform 'simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes and only occasional supervision' " was insufficient to meet *Mascio* requirements); *Steele v. Comm'r, Soc. Sec.*, Civ. No. MJG-15-1725, 2016 WL 1427014, at *4 (D. Md. Apr. 11, 2016) (citing SSR 96-9P) (holding that when a RFC includes durational limitations an ALJ must consider that the normal 8-hour workday already includes breaks approximately every two (2) hours and provide further explanation as to how limiting someone to breaks every two hours "adequately accounts for a moderate limitation in the ability to stay on task" or else it does not meet the *Mascio* requirements).

[3] Despite a filing date of April 30, 2019, Commissioner's motion fails to discuss *Thomas*, which was decided on January 15, 2019.

> [The plaintiff] is able to follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace. She can have occasional public contact or interaction and frequent, but not continuous, contact or interaction with coworkers and supervisors. [She] must avoid work involving crisis situations, complex decision making, or constant changes in a routine setting.

*Thomas*, 916 F.3d at 310 (citations omitted). In reversing the lower court's decision, the Fourth Circuit made it clear that when an ALJ finds a claimant has moderate limitations in concentration, persistence, or maintaining pace, the ALJ is expected to include specific conclusions about how the claimant's "mental limitations affect her ability to perform job-related tasks for a full workday—a benchmark established by the [S.S.A.'s] own regulations." *Id.* at 312 (citing SSR 96-8P, 1996 WL 374184 at *2). The Court further opined that when an ALJ includes specific terminology in the limitations included in an RFC assessment, she must provide sufficient information so that the courts can understand the term means so that they can "assess whether their inclusion in [an] RFC is supported by substantial evidence." *Id.* (finding the terms "production rate" and "demand pace" to be "not common enough for [the Court] to know what they mean without elaboration").

As previously noted, at step three the ALJ found that Plaintiff suffered from moderate difficulties in concentration, persistence, or maintaining pace. R. 19. After making this determination, the ALJ went onto his RFC assessment and included the following "non-exertional" limitations:

> [Plaintiff] is capable of performing simple, routine, and repetitive tasks in a work setting with occasional decision-making and occasional changes in the work setting. She should not work in an environment with fast pace requirements or high production quotas. She can have occasional or superficial interaction with co-workers and supervisors, but no contact with the public.

R. 20. As the Court "cannot review the ALJ's mental-impairment evaluation, we cannot say that [he] properly assessed [Plaintiff's] RFC." *Patterson*, 846 F.3d at 662 (citing 20 C.F.R. §

404.1520a(c)(3); *Mascio*, 780 F.3d at 637). However, in light of the Fourth Circuit's clarification in *Thomas*, the Court notes that the RFC assessment as it is currently worded fails to include sufficient corresponding limitations for Plaintiff's moderate difficulties in concentration, persistence, or maintaining pace. *See Thomas*, 916 F.3d at 312. Without explicitly addressing the issue of whether Plaintiff's "mental limitations affect [her] ability to perform job-related tasks for a full workday," the ALJ has failed in his duty to account for Plaintiff's moderate limitations in concentration, persistence, or maintaining pace.[4] *Id.* Additionally, the Fourth Circuit made it clear that limiting a claimant from "environment[s] with fast pace requirements or high production quotas" is insufficient to accommodate moderate difficulties in concentration, persistence, or maintaining pace absent additional "elaboration" as to their meaning. *Id.* at 312.

Turning to the ALJ's narrative discussion, the Court notes that it does include a detailed recitation of the evidence in the record and provides an explanation for how that evidence supports his RFC findings. *Talmo*, 2015 WL 2395108, at *3. Specifically, the ALJ stated:

> First, [Plaintiff's] treatment records did not support [Plaintiff's] allegations of severe and profound functional limitations. As discussed above, her impairments were generally at most moderate in nature. Providers offered conservative treatment for these impairments, which generally appeared to control her symptoms when she was compliant with treatment. In addition, there were no consistent indications from any of her providers that they felt that [Plaintiff] had permanent functional deficits.
>
> Second, the medical opinion evidence failed to validate most of [Plaintiff's] allegations of impairment. The medical opinion evidence indicated that [Plaintiff] was capable of work at all exertional levels with some mental and social limitations.

---

[4] It is well established that limitations to "simple, routine tasks" do not address moderate limitations in concentration persistence, or maintaining pace. *See Mascio*, 780 F.3d at 638. Courts have also found a limitation to "simple, work-related decisions" as deficient for accommodating a claimant's moderate limitations in his ability to stay on task. *See, e.g.*, *McDonald*, 2017 WL 3037554, at *4.

15

Third, [Plaintiff's] own inconsistent statements and behavior discount [Plaintiff's] allegations of limitation. As noted above, [Plaintiff] continually expressed her desire to return to work, which suggests she believed herself capable of doing so. This behavior is inconsistent with her allegations of disability during the same period. While [Plaintiff] was not able to return to her prior workplace, it appears that this inability was context-specific, given problematic management at her prior job. Her ability to thrive in other work environments is evidenced by her successful return to full-time work recently. Records show that [Plaintiff] had on exacerbation of symptoms requiring hospitalization, but the remainder of the mental health evidence indicates that [Plaintiff's] symptoms were largely situational in nature and responded to treatment when she was compliant.

Even after giving [Plaintiff] the benefit of every possible doubt and crediting her testimony to the extent that it was consistent with the medical evidence, her extreme allegations regarding functional limitations are simply not supported by the evidence as a whole. Despite her allegations, the record lacked any evidence that [she] was so significantly limited, which suggested that her limitations were not as severe as she reported. All of these factors discount her allegations of limitation and support the limitations identified in the [RFC] statement.

R. 24–25. This explanation engages in the type of logical reasoning that courts have long sought from ALJs in social security disability decisions. *See Patterson*, 846 F.3d at 663; *see, e.g.*, *Mascio*, 780 F.3d at 637 (refusing to hold that ALJ's lack of reasoning constituted harmless error "[b]ecause we are left to guess about how the ALJ arrived at his conclusions" regarding an RFC assessment). However, in light of binding precedent from the Fourth Circuit, this Court is compelled to find the ALJ's discussion insufficient to meet the requirements of *Masico* for the following reasons: First, the ALJ's explanation does not discuss explicitly whether Plaintiff's "mental limitations affect [her] ability to perform job-related tasks for a full workday." *Thomas*, 916 F.3d. at 312. This is particularly the case where medical evidence shows Plaintiff's depression and other mental health issues impact her daily life. *See, e.g.*, R. 70 (noting Plaintiff began to cry during her initial disability determination assessment); R. 554–58 (discussing Plaintiff's deteriorating condition from July 10, 2015 to September 24, 2015, eventually resulting in her inability to work full-time or for longer than eight hours). In his discussion, the ALJ

indicates that Plaintiff has the "ability to thrive in other work environments is evidenced by her successful return to full-time work recently." R. 24. However, the Court cannot extrapolate from that statement—without delving into impermissible weighing of evidence—"how long and under what conditions Plaintiff is able to focus [her] attention on work activities and stay on task at a sustained rate." *Dwayne D. v. Berryhill*, Civ. No. TMD 17-3809, 2019 WL 1317234, at *5 (D. Md. Mar. 22, 2019) (citing *Thomas*, 916 F.3d at 312 n.5.). Further, Plaintiff appears to have had some difficulty with situations where her allotted break times were disregarded by management, R. 37, or she was forced to work longer shifts than expected, R. 439. Such evidence raises the question of Plaintiff's ability to perform job-related tasks for a full workday and should therefore be addressed.

Second, from his discussion it appears evident the ALJ intended to include some sort of mental limitation in the RFC. *See* R. 24 ("The medical opinion evidence indicated that [Plaintiff] was capable of work at all exertional levels with some mental and social limitations."). However, as discussed above, none of the limitations included in the RFC address moderate limitations in concentration, persistence, or maintaining pace. Further, as the ALJ did not provide an additional explanation for the terms "fast pace requirements or high production quotas," the Court cannot ascertain whether these terms are sufficient mental limitations for Plaintiff. *See Thomas*, 916 F.3d. at 312; *see also Perry v. Berryhill*, 765 Fed. App'x 869, 872 (4th Cir. 2019) (finding an ALJ's inclusion of a RFC limitation to a "non-production oriented work setting" insufficient where there was no definition of the phrase in regulations or case law and the ALJ "offered no explanation of her own for what she meant when she used the phrase").

Finally, the Fourth Circuit noted in *Thomas* that "the ALJ 'express[ed] [plaintiff's] RFC first and only *then* conclud[ed] that the limitations caused by [plaintiff's] impairments were

consistent with that RFC . . . .'" *Thomas*, 916 F.3d 307, 312 (citing *Monroe*, 826 F.3d at 188

(emphasis in original)). The *Thomas* Court reaffirmed the holding that "[s]tating a claimant's

RFC before conducting a function-by-function analysis is an error—even though, on its own, it

does not necessarily require remand." *Id.* The Fourth Circuit's decision is unclear how the ALJ

in *Thomas* "express[ed]" this RFC. In this Court's experience, ALJs will include their RFC

findings in the heading of the section of their decision discussing a claimant's RFC. In the body

of the discussion that follows, the ALJs will then discuss the evidentiary support and reasoning

behind their conclusion. When they do refer to the RFC again in the discussion, it will usually

be in general terms. The ALJ in this case followed this same pattern of his colleagues. He stated

the RFC in the heading of the section but did not explicitly state it or discuss its components in

any other part of his decision. R. 20. The only other reference to the RFC in his discussion is

where the ALJ concludes by stating that, "[a]ll of these factors discount [Plaintiff's] allegations

of limitation and support the limitations identified in the [RFC] statement." R. 25. Absent

further guidance from the Fourth Circuit, this Court cannot determine whether this is sufficient to

correct the error identified in *Thomas*. However, a more thorough discussion of how the RFC

limitations included correspond with the ALJ's assessment of the evidence in the record would

have aided this Court's review of the ALJ's decision in this case. For example, without

identifying which limitation accommodates for the finding of moderate limitations in

concentration, persistence, or maintaining pace, or clearly stating that no such limitation is

necessary, it is impossible to determine whether the RFC was properly determined. Accordingly,

upon remand, the ALJ is ordered to ensure that any future RFC assessment is done in accordance

with the applicable law.

**C. In light of the preceding errors in the ALJ's assessment of Plaintiff's RFC, the VE's testimony was not based upon sufficient evidence.**

Turning to Plaintiff's final argument, Plaintiff asserts that the VE's testimony was based on hypotheticals that did not fully capture Plaintiff's functional limitations. Pl.'s Mem. 15–16. Accordingly, Plaintiff argues the Commissioner failed to meet her burden at step five as the ALJ based his determination that Plaintiff was not disabled on flawed testimony. Pl.'s Mem. 21–23. Commissioner counters that the VE's testimony was based upon the RFC as ALJ determined, which was itself based on sufficient evidence. Comm'r's Mem. 12–13.

After determining a claimant's RFC, an ALJ "must then decide the ultimate issue of whether the Commissioner has satisfied her burden of showing that the claimant can engage in a job that 'exist[s] in significant numbers in the national economy.'" *Morgan v. Barnhart*, 142 F. App'x 716, 720 (4th Cir. 2005) (quoting 20 C.F.R. § 404.1560(c)(1) (2004); 20 C.F.R. § 404.1560(c)(2)). Typically, an ALJ uses evidence presented by a VE. *Id.* However:

> [T]he ALJ must rely primarily on the Dictionary of Occupational Titles ("DOT") for information about the requirements of work in the national economy, and must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and the DOT, before relying on testimony by the vocational expert.

*Chestnut v. Berryhill*, Civ. No. 8:17-CV-01696-GLS, 2018 WL 4565540, at *4 (D. Md. Sept. 24, 2018) (citing SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000)). Further, the VE's testimony must be made "in response to questions from the ALJ that accurately reflect the claimant's work-related abilities." *Morgan*, 142 F. App'x at 720–21 (stating a VE's testimony must be "based on the claimant's age, education, work experience, and RFC" in order for an ALJ to rely upon it). "[A]n ALJ is afforded 'great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question.'" *Chavis v. Berryhill*, Civ. A. No. ADC-17-1123, 2018 WL 1033267, at *14 (D. Md.

Feb. 22, 2018) (quoting *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (per curiam)). Accordingly, "a hypothetical question is unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (per curiam) (citations omitted) (emphasis omitted).

The first step of the Court's analysis is only concerned with whether the questions "adequately reflect[]" Plaintiff's RFC. *Id*. Here, the hearing transcript shows that the ALJ posed a question to the VE concerning a hypothetical individual with limitations that mirrored those ultimately incorporated in the RFC determination. R. 59. As at least one of the questions mirrored the ultimate RFC assessment, the inquiry turns next to whether there is substantial evidence to support the RFC assessment. *Chavis*, 2018 WL 1033267, at *14 (quoting *Koonce*, 1999 WL 7864, at *5). As previously analyzed, the Court is unable to assess how the ALJ determined Plaintiff's degree of limitation in concentration, persistence, or maintaining pace. *See supra* Section A. Further, the RFC as currently articulated fails to account for the finding that Plaintiff has moderate limitations in her ability to concentrate, persist, or maintain pace, or explain why no RFC limitations are necessary. *See supra* Section B. Therefore, while the way in which the ALJ posed his hypothetical questions to the VE was procedurally correct, the Court is unable to ascertain whether the RFC is based upon substantial evidence. *See Mascio*, 780 F.3d at 637–38 (noting that where a hypothetical matches an ALJ's RFC finding, it is "incomplete only if the ALJ fail[s] to account for a relevant factor when determining [the claimant's RFC]"). Accordingly, remand is warranted on this issue.

## IV.    Conclusion

Based on the foregoing, the Court **REVERSES** and **REMANDS** this matter with specific instructions for the ALJ as outlined in the foregoing opinion.  In making this decision, the Court offers no opinion on the ALJ's ultimate determination that Plaintiff is not disabled within the meaning of the Social Security Law.


June 27, 2019                                             _____/s/_____
                                                                     Charles B. Day
                                                                     United States Magistrate Judge


CBD/clc